# CHARLESTON.

FERGUSON v. OHIO VALLEY ELECTRIC RAILWAY CO.

Submitted April 16, 1918. Decided April 23, 1918.

STREET RAILROADS—*Personal Injury—Burden of Proof.*

In an action for personal injuries the burden of showing actionable negligence on the part of the defendant as alleged is upon the plaintiff, failing in which he is not entitled to a verdict and judgment for the injuries sustained.

Error to Circuit Court, Cabell County.

Action by W. V. Ferguson against the Ohio Valley Electric Railway Company. Judgment for plaintiff, and defendant brings error. *Reversed and remanded.*

*Strickling & Strickling*, for plaintiff in error.
*Daugherty & Riggs*, for defendant in error.

MILLER, JUDGE:

In an action for personal injuries, the result of the alleged negligence of the defendant in operating one of its cars on Eleventh Avenue, in the City of Huntington, where plaintiff

was attempting to cross from the north to the south side of said avenue, striking him and doing him the injuries of which he complains, he obtained a verdict and judgment for $2500.00.

We find no error in the giving or refusing of instruction, with one exception. As the evidence stood at the close of the trial we think the court erred in denying to defendant the peremptory instruction to the jury to return a verdict in its favor. The instructions given fairly covered the different theories of the parties, and if the evidence had been sufficient to support the verdict there should be no reversal. But as we view the evidence no negligence on the part of the defendant is shown justifying the verdict.

At the time of his injuries plaintiff was a man sixty-seven years of age. Eleventh Avenue was thirty feet in width from curb to curb. When struck by the car plaintiff was attempting to cross from the north to the south side, not at a street crossing, but at an intermediate point between Sixteenth and Elm Streets. The car that injured him had just turned out of Sixteenth Street into Eleventh Avenue, and was going east at a slow speed, due to a wagon and an automobile in the way and trouble with little children playing there on previous trips. Coming in the opposite direction on the north side of the street was a large dump wagon close to the track, and back of it and going in the same direction was an automobile, and all of the witnesses with perhaps one exception concur in saying that the street car, dump wagon, automobile, and the plaintiff, met on the avenue near the same point. Plaintiff himself when examined as a witness remembered little as to what had taken place. All the witnesses to the transaction said plaintiff started to cross after the dump wagon had passed and that after reaching the north rail of the track he stepped back about six feet, as if he had observed the oncoming car and to avoid it; that then the horn of the approaching automobile was blown, and seeing it, and as if to avoid it, he threw up his hand and stepped forward onto the track in front of the car and was struck by it and injured. Plaintiff's evidence is: "I suppose I got scared or stepped back, or something. I never seen the street car

at all, and I don't recollect a thing about it; I don't recollect when it struck me." When asked what attracted his attention he said: "The automobile, I suppose it must have been that. * * * * * I couldn't tell you; as I said before, I don't recollect anything only I do recollect the automobile, just merely do recollect it, that is all." Just how far the dump wagon had gotten beyond the place of the accident is variously estimated by the witnesses.. Howes, a witness for plaintiff, who had been talking to plaintiff when he started to cross the street, says the wagon was one hundred and twenty feet away from the front end of the car when it hit Ferguson, and that there was nothing between the car and plaintiff. On cross examination he says that Ferguson was a couple or three lots west of where he was struck when he first stepped upon the track, that he then stepped back off the track, and that when he stepped back on the track on the approach of the automobile and in front of the car he was only about six feet ahead of the car, and that when he stepped back the first time he was about six and a half feet from the track; that when the car hit him he was standing with one foot on the rail and the other about a foot and a half off the rail looking right at the car, when hearing the automobile he threw up his hands, looked first at the automobile, then at the street car, and then almost immediately he was struck. To show negligence of the defendant, plaintiff relied mainly on the evidence of the witness Richerts, who was standing on the south side of the avenue at the time of the accident. His evidence as to the relative positions of plaintiff, the dump wagon, and the automobile, just before and at the time of the accident, is very unsatisfactory. He says, for example, that when the automobile was forty feet east of Ferguson he was between the curb and the track; while Casto, in charge of the automobile, a witness for plaintiff, says Ferguson was stepping off the curb when he was forty feet from him and blew his horn, and that he then got out of his way by stepping on the track, when the car hit him. He further says that when starting across the street Ferguson came on, he should say, to within a foot and a half of the street car track, and that on stepping it off afterwards he found that the street car at

that time was about two hundred and twenty-five feet from where Ferguson stood. But when asked what Ferguson did when the automobile blew, he says: ''He started from the north side to the south side, but he was excited, I would judge, from my opinion, that he either thought one or the other was going to hit him, and he started back and seen he could not make it back to the curb, and when he turned back to go to the north side of the street, the street car was right up on top of him and he throwed it up and the car hit him; he had no chance to go either way; he was wedged right in there.'' It was quite manifest that this witness had his facts much confused and in conflict. If as he says Ferguson after starting across the street had come to within a foot and a half of the track and at which time the car was two hundred and twenty-five feet from him, he could not have been in the precarious situation he described for we know that if the car was that distance away Ferguson would have had plenty of time to get to the south side of the avenue before the car arrived. The car was going slowly, not over four or five miles per hour, and while the car was traveling two hundred and twenty-five feet he would manifestly have had ample time to get safely to the south side of the street, only fifteen feet away, and to a place of safety. The witness says he called to him and that he apparently did not hear him, and that he saw he was going to get hit. If the car had been two hundred and twenty-five feet away, when Ferguson reached the track the witness would have had ample time to have reached and rescued Ferguson from danger. Moreover, all the other witnesses say, and we do not think this witness' evidence substantially contradicts them, that after plaintiff reached the track in the first instance he stepped back, Richerts says a foot and a half, the others six to six and a half feet, a safe distance from the track, and that when the automobile sounded its horn, and in his excitement he stepped back on the track in front of the car when it was not over six feet from him. If he was six or six and a half feet from the track he was in no danger of being hit, and if the motorman on the car did or should have seen him step back to a place of safety, he had the right to assume that he would

remain there until the car had passed him before attempting to cross the track, and no negligence can be imputed to him for not stopping the car.   Upon no view of the plaintiff's evidence does it in our opinion make out even a prima facie case of actionable negligence against the defendant, nor is plaintiff's evidence aided by that of defendant; quite the contrary.   The motorman says, and he is corroborated in part by the conductor, and by the physical facts and circumstances, that he approached the place of the accident cautiously and by continuously "donging the bell," that he did not see Ferguson until he emerged from behind the dump wagon just before the car struck him, that he at once cut off the power, applied the regular and emergency brakes, and brought the car to a stop within half a car length, and did all he could after observing plaintiff who had been out of his view until just at the instant he emerged from behind the dump wagon.   We can not see what the motorman could have done that he did not do to avoid injuring plaintiff.   So far as the defendant is concerned it seems to have been a case of unavoidable accident.   The plaintiff professes not to have seen the oncoming car, but if it was visible he should have seen it.   It ought to have been as much in his view, as he was in that of the motorman.   If he saw the car it was negligence on his part after stepping back to again thrust himself in front of the car on the track, as his witnesses all say he did, when it was within a few feet of him.   How was the motorman to anticipate he would do that.   That he became confused by the noise and approach of the automobile is highly probable, but negligence could not be imputable to the motorman on this ground, unless he saw or should have seen him in that condition in time to avoid injuring him and failed to do so.   Plaintiff who had the burden must fail we think for want of sufficient proof to establish negligence on the part of defendant.   The judgment below will, therefore, be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded*